## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In the matter of: | ) | Chapter 11 |
| | ) | |
| PATRICK Y. LIU | ) | Case No. 06 B 09948 |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |

## MEMORANDUM OPINION ON MOTION TO
## RECLASSIFY CLAIM AND ON OBJECTION TO CLAIM

Patrick Y. Liu (the "Debtor") filed a voluntary petition for Chapter 11 bankruptcy relief on August 16, 2006. The Debtor scheduled Jasper Ofoma as a disputed creditor on Schedule F. On October 13, 2006, Ofoma filed a proof of claim for $54,000. In support of his claim, Ofoma attached a default judgment for $54,000 that he obtained against Patrick Liu, d/b/a Liu Architects, P.C. in the Circuit Court of Cook County on July 26, 2005. (Objection to Claim No. 11 Filed by Jasper Ofoma, Ex. A, p. 2). The Debtor objects to Ofoma's claim. Ofoma also seeks to reclassify his claim from an unsecured claim to a priority claim.

On November 28, 2007 and January 8, 2007, this court held hearings on the Debtor's objection to Ofoma's claim and on Ofoma's motion to reclassify claim. At the hearing, this court heard testimony from the Debtor, Ofoma, and Attorney Leroy W. Bannister, Jr., an employee of East Lake Management and Development Corporation ("East Lake").

East Lake orally contracted with the Debtor's corporation, Liu Architects, P.C. ("Liu Architects") to perform lead abatement and engineering work. On March 18, 2003, Liu Architects entered into a subcontract, the Abbreviated Form of Agreement between Architect and Consultant (the "Contract"), with Ofoma's corporation, Real Time Environmental, Inc. ("Real Time"). (Objection to Claim No. 11 Filed by Jasper Ofoma, Ex. B). The Contract provided for Real Time to perform lead-based paint testing for seven properties owned by East Lake. (Id.).

-1-

The Debtor was not a party to the Contract but signed the Contract on behalf of Liu Architects. Furthermore, the Contract did not provide a personal guaranty of payment by the Debtor.

The Debtor offered a number of invoices that Liu Architects received from Real Time for work Real Time performed under the Contract. (Debtor's Ex. 4). The Debtor also submitted copies of checks that Liu Architects paid to Real Time pursuant to Real Time's invoices. (Id.). The Debtor explained that Liu Architects did not pay two of Real Time's invoices because the reports from the testing data were incorrect. The reports were never corrected. The total amount due under the two unpaid invoices was about $10,000.

Leroy W. Bannister, Jr., an employee of East Lake, testified that some of East Lake's properties receive rental assistance from the United States Department of Housing and Urban Development ("HUD"). As a result, the testing that Liu Architects performed followed HUD regulations. Bannister further testified, however, that East Lake was not a party to the Contract with Ofoma and that Liu Architects did not enter into any contracts directly with HUD.

### Objection to Claim

Ofoma relies on his default judgment for $54,000 against the Debtor d/b/a Liu Architects to support his claim. Although the Debtor is not a party to the Contract, Ofoma argues that the Debtor should be liable under the Contract because the Debtor is the 100% shareholder, president, and director of Liu Architects. Ofoma also argues that the corporate veil of Liu Architects should be pierced.

The Debtor argues that Ofoma's claim of $54,000 should be disallowed because any amounts owed to Ofoma under the Contract are liabilities of Liu Architects only and not of the Debtor in his personal capacity. The Debtor submits the Contract as evidence that the parties to the Contract are Liu Architects and Real Time only, and that the Debtor and Ofoma both executed the Contract in their capacities as officers of their respective corporations.

This court finds that Ofoma's claim is disallowed because the Debtor has proved that the debt owed to Ofoma or Real Time, if any, is a debt of the Debtor's corporation, Liu Architects, not a debt of the Debtor individually. Mr. Ofoma has not offered any evidence in support of his request that the court pierce the corporate veil. Thus, the court sustains the Debtor's objection to Ofoma's claim.

## Motion to Reclassify Claim

Ofoma also moves this court to reclassify his claim as a priority claim. Ofoma argues that his claim is classified as an unsecured claim but should be classified as a secured claim. Ofoma alleges that the State of Illinois awarded the Debtor a contract to remove lead from buildings and that the State of Illinois guaranteed payment under the contract. Ofoma further alleges that the Debtor then subcontracted with Ofoma to remove the lead and the Debtor told Ofoma that payments under the contract were guaranteed by the State of Illinois. In his reply, Ofoma states that the Debtor received funds from the federal government but never paid the funds to Ofoma.

The Debtor denies Ofoma's allegations. Moreover, the Debtor offers his own testimony and the testimony of Bannister to establish that the Debtor did not enter into a contract with HUD or any other agency of the federal or state government.

The court finds that Ofoma has not provided sufficient evidence to support the allegations of his motion. Ofoma has offered no evidence that payments under the Contract were guaranteed by the federal or state government. The court finds Ofoma's claim should not be classified as a secured claim.

Moreover, the court finds that Ofoma has not identified any basis for his claim to receive priority status under 11 U.S.C. § 507. Section 507 of the Bankruptcy Code states as follows:

-3-

(a) The following expenses and claims have priority in the following order:
    (1) First:

        (A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.

        (B) Subject to claims under subparagraph (A), allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition, are assigned by a spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative to a governmental unit (unless such obligation is assigned voluntarily by the spouse, former spouse, child, parent, legal guardian, or responsible relative of the child for the purpose of collecting the debt) or are owed directly to or recoverable by a governmental unit under applicable nonbankruptcy law, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition be applied and distributed in accordance with applicable nonbankruptcy law.

        (C) If a trustee is appointed or elected under section 701, 702, 703, 1104, 1202, or 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers assets that are otherwise available for the payment of such claims.

    (2) Second, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

    (3) Third, unsecured claims allowed under section 502(f) of this title.

    (4) Fourth, allowed unsecured claims, but only to the extent of $10,950 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for—

        (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or

        (B) sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of

the amount that the individual or corporation earned by acting as an
independent contractor in the sale of goods or services was earned from
the debtor.

(5) Fifth, allowed unsecured claims for contributions to an employee benefit plan–

    (A) arising from services rendered within 180 days before the date of the
filing of the petition or the date of the cessation of the debtor's business,
whichever occurs first; but only

    (B) for each such plan, to the extent of –

        (i) the number of employees covered by each such plan multiplied
by $10,950; less

        (ii) the aggregate amount paid to such employees under paragraph
(4) of this subsection, plus the aggregate amount paid by the estate
on behalf of such employees to any other employee benefit plan.

(6) Sixth, allowed unsecured claims of persons

    (A) engaged in the production or raising of grain, as defined in section
557(b) of this title, against a debtor who owns or operates a grain storage
facility, as defined in section 557(b) of this title, for grain or the proceeds
of grain, or

    (B) engaged as a United States fisherman against a debtor who has
acquired fish or fish produce from a fisherman through a sale or
conversion, and who is engaged in operating a fish produce storage or
processing facility–

but only to the extent of $5,400 for each such individual.

(7) Seventh, allowed unsecured claims of individuals, to the extent of $2,425 for
each such individual, arising from the deposit, before the commencement of the
case, of money in connection with the purchase, lease, or rental of property, or the
purchase of services, for the personal, family, or household use of such
individuals, that were not delivered or provided.

(8) Eighth, allowed unsecured claims of governmental units, only to the extent
that such claims are for

    (A) a tax on or measured by income or gross receipts for a taxable year
ending on or before the date of the filing of the petition –

        (i) for which a return, if required, is last due, including extensions,
after three years before the date of the filing of the petition;

        (ii) assessed within 240 days before the date of the filing of the
petition, exclusive of

            (I) any time during which an offer in compromise with
respect to that tax was pending or in effect during that 240-
day period, plus 30 days; and

            (II) any time during which a stay of proceedings against
collections was in effect in a prior case under this title
during that 240-day period, plus 90 days.

        (iii) other than a tax of a kind specified in section 523(a)(1)(B) or

523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;

(B) a property tax incurred before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition;

(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;

(D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (4) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition;

(E) an excise tax on—

(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

(F) a customs duty arising out of the importation of merchandise

(i) entered for consumption within one year before the date of the filing of the petition;

(ii) covered by an entry liquidated or reliquidated within one year before the date of the filing of the petition; or

(iii) entered for consumption within four years before the date of the filing of the petition but unliquidated on such date, if the Secretary of the Treasury certifies that failure to liquidate such entry was due to an investigation pending on such date into assessment of antidumping or countervailing duties or fraud, or if information needed for the proper appraisement or classification of such merchandise was not available to the appropriate customs officer before such date; or

(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

An otherwise applicable time period specified in this paragraph shall be suspended for any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of a request by the debtor for a hearing and an appeal of any collection action taken or proposed against the debtor, plus 90 days; plus any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus

90 days.

(9) Ninth, allowed unsecured claims based upon any commitment by the debtor to a Federal depository institutions regulatory agency (or predecessor to such agency) to maintain the capital of an insured depository institution.

(10) Tenth, allowed claims for death or personal injury resulting from the operation of a motor vehicle or vessel if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance.

(b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

(c) For the purpose of subsection (a) of this section, a claim of a governmental unit arising from an erroneous refund or credit of a tax has the same priority as a claim for the tax to which such refund or credit relates.

(d) an entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(1), (a)(4), (a)(5), (a)(6), (a)(7), (a)(8), or (a)(9) of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

11 U.S.C. § 507.

Ofoma argues that his claim is for wages earned within 180 days of the filing of the bankruptcy petition under § 507(a)(4). The only evidence of when the services were performed, however, is the Contract which was entered into in 2003 and two invoices dated June 3, 2003. Even if Ofoma was an employee, the Contract and invoices do not reflect wages earned within 180 days of the filing of the bankruptcy petition on August 16, 2006. Thus, the court denies Ofoma's request for reclassification of his claim to a priority claim for wages due.

Ofoma's motion to reclassify claim is DENIED. The Debtor's objection to claim number 11 filed by Jasper Ofoma is SUSTAINED. Claim number 11 filed by Jasper Ofoma is DISALLOWED. The court has entered separate orders on each matter.

-7-

Dated: January 15, 2008

ENTERED:   *Jacqueline P. Cox*

*J. P. Cox*

Jacqueline P. Cox
United States Bankruptcy Judge